**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Thomas SPIEGEL, Defendant–Appellant.**

No. 92–50732.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1993.

Decided May 13, 1993.

---

1. The Honorable R.E. Longstaff, United States District Judge for the Southern District of Iowa.

Robert G. Morvillo, Frederick N. Saal, Morvillo, Abramowitz, Grand, Iason & Silberberg, New York City, Richard Marmaro, John W. Crumpacker, McCambridge, Deixler, Marmaro & Goldberg, Los Angeles, CA, for defendant-appellant Thomas Spiegel.

John F. Walsh, Reid M. Figel, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee U.S.

Carolyn B. Lieberman, Acting Chief Counsel, Therese Pritchard, Deputy Chief Counsel, Dirk S. Roberts, Asst. Chief Counsel, Washington, DC, Office of Thrift Supervision, as amicus curiae.

Before: KOZINSKI, SUHRHEINRICH * and T.G. NELSON, Circuit Judges.

* The Honorable Richard F. Suhrheinrich, United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

KOZINSKI, Circuit Judge:

## The Facts

Defendant Thomas Spiegel was the Chief Executive Officer and Chairman of Columbia Savings and Loan, a thrift institution that—like so many others—collapsed in the twilight of the 1980's. Having discovered what it believed were violations of various statutes and regulations in Spiegel's conduct at Columbia, the Office of Thrift Supervision started an administrative proceeding pursuant to 12 U.S.C. § 1818, seeking to establish that some of Mr. Spiegel's not inconsiderable personal assets in fact belong to Columbia and its depositors. As part of that administrative proceeding, OTS issued restraining orders to ensure that Spiegel's assets would not be dissipated or hidden. Spiegel may use his assets "to pay ordinary and reasonable living expenses," but all expenses greater than $5,000 require approval of the OTS.

The OTS's authority to issue the freeze order comes from 12 U.S.C. § 1818(c). That section also provides a mechanism for judicial review: A party aggrieved by such an order may ask the proper district court to modify or limit it. In 1990, Spiegel brought such an action in the Central District of California, and on appeal we upheld the OTS's order. *Spiegel v. Ryan*, 946 F.2d 1435 (9th Cir. 1991). The case is still pending in district court before Judge Wilson; Spiegel has made several unsuccessful applications for modification of the OTS's order.

In the midst of all this, a grand jury indicted Spiegel on criminal charges, also in the Central District of California. The indictment concerns Spiegel's activities as officer and director of Columbia, and thus grows out of the same nucleus of facts as the OTS administrative proceeding. Naturally, Spiegel wanted the best defense money could buy, but the OTS's restraining order got in the way: The order forbids attorney's fees in amounts over $250 an hour and, in any event, prohibits the payment of a retainer.

It appears Spiegel's chosen lawyers, Robert Morvillo and Richard Marmaro (hereinaf-

ter M & M), will not work on such skinflint terms. Not only is the hourly rate low, we are told, but no white collar criminal lawyer of their stature will take on a major case like this without a hefty retainer. M & M therefore have refused to make a general appearance; instead, they've made a special appearance to complain about the OTS's restraining order. Thus, ten months after being indicted, Mr. Spiegel still faces a federal prosecution without having retained a lawyer.[1]

In their capacity as special counsel, M & M filed an application in the criminal proceeding asking the district court to "issue an order authorizing Thomas Spiegel to use his own assets to pay attorneys' fees in advance" and "to pay counsel at their customary hourly rates," despite the OTS order to the contrary. Judge Takasugi, who presides in the criminal case, refused and Spiegel appealed.

### The Law

1. The government first argues we have no jurisdiction to consider this appeal because the district court order was not a final judgment, and was not otherwise appealable. A motions panel of this court considered and rejected the same argument, ruling that this was a collateral order appealable under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). While we have discretion to reconsider that ruling, *United States v. Houser*, 804 F.2d 565, 567–68 (9th Cir.1986), we also have discretion not to. Without endorsing the unpublished decision of the motions panel, we decline to revisit the ground they traveled and push on to the merits.

2. Not only does section 1818 provide its own review mechanism, it makes that mechanism exclusive:

> The appropriate Federal banking agency may ... apply to the United States district court ... within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section, and such courts shall have jurisdiction and power to order

and require compliance herewith; *but except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order.*

12 U.S.C. § 1818(i)(1) (emphasis added). This statutory language leaves no room to doubt that Congress provided only one avenue for challenging the terms of an OTS restraining order—an action brought under 12 U.S.C. § 1818. The case before Judge Takasugi (from which this appeal proceeds) is not an action under section 1818(c); it is a criminal proceeding. By the clear terms of the statute, the district court in this case has no authority to modify the OTS's restraining order.

In light of the clear statutory language, defendant's argument that this leads to an unjust or inefficient result is totally unavailing. Aside from the fact that such policy arguments cannot override Congress's clear choice, *see, e.g., Board of Governors v. MCorp Financial, Inc.*, — U.S. —, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), defendant's suggested approach would raise serious problems. To begin with, OTS is not (and cannot be) a party to this criminal case; we fail to understand how its order could be modified in a proceeding to which it is not a party. Moreover, allowing review of the OTS's order in this criminal proceeding would set up the possibility for conflict between the rulings of two separate district courts—the one with jurisdiction over the OTS pursuant to section 1818, the other with jurisdiction over the criminal case. This is a serious enough problem where both district courts are within the same circuit; if the cases were brought in different circuits— which could easily happen—the conflicts would be entirely unmanageable. Even absent the clear language, therefore, we would be reluctant to read the statute as establishing a procedure that pits one district court against another, and catches a party (here

---

1. The parties have informed us that the district court recently appointed an attorney as retained counsel for Mr. Spiegel. As this is not part of the

record before us, we do not rule on the propriety of the district court's unusual action.

the OTS) between potentially conflicting rulings.

Defendant places great reliance on our recent decision in *United States v. Unimex, Inc.*, 991 F.2d 546 (9th Cir.1993), where we noted that "[t]he district court consisted of all the judges of the United States District Court for the Central District of California, so Unimex's motion could not properly be rejected as being in the wrong court." *Id.* at 550 (citation and footnote omitted). In *Unimex* the operative provision was Fed.R.Crim. Proc. 41(e) which gave the district court in the criminal case authority to consider a claim for return of property improperly seized. We held only that the pendency of a forfeiture proceeding before another judge of the same court did not prevent the district court in the criminal case from considering a motion properly brought before it under rule 41(e). Defendant here can point to no analog to rule 41(e) giving the criminal district court jurisdiction over the OTS's order.

3. Defendant nonetheless contends we must—as a constitutional matter—construe section 1818 as authorizing the district court in the criminal case to modify the OTS's order so as to avoid infringement of defendant's Sixth Amendment right to counsel. We don't see why. The district court in charge of the criminal case must be ever mindful of defendant's right to counsel as guaranteed by the constitution, and the OTS's order may, indeed, affect the exercise of that right. If so, the district court may take remedial steps within its authority, such as appointing counsel under the Criminal Justice Act, or dismissing the indictment, *see Unimex, Inc.*, 991 F.2d at 551, provided, of course, defendant qualifies for such relief.

What the district court may not do, however, is modify the OTS's order.

Spiegel is in no different a position than any other criminal defendant whose assets are tied down by a lien, a prejudgment attachment or a bankruptcy court order. In all such cases, the freezing of defendant's assets may interfere with his ability to pay a lawyer; but this does not empower the district court to interfere with the bankruptcy proceeding, or to lift the lien or attachment imposed by another court, state or federal.

Defendant, moreover, has a forum available to him—within the same courthouse, no less—for raising his claim that he is entitled not merely to competent counsel, but to the very best counsel he can afford.[2] This is a serious claim and defendant can have it considered by seeking modification of the OTS's order in the case now pending before Judge Wilson.[3] If he is not fully successful, he can appeal that ruling and present the argument to us in a case where we have authority to consider it. Not coincidentally, the OTS would be a party in that proceeding, and we could thus be assured that any decision we rendered on these novel issues would have the benefit of full adversarial briefing and argument.

### The End

We **AFFIRM** the judgment of the district court.

---

2. Defendant contends that civil pretrial restraints cannot keep a defendant from using his own money to hire a lawyer. *Caplin & Drysdale v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), and *United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), two predictable hurdles, defendant distinguishes as turning on relation-back provisions which divested defendants of an interest in the forfeited property. Defendant also argues that, in light of the Sixth Amendment concerns, the OTS interpreted too broadly its statutory authority to guard against "significant dissipation" of defendant's assets. Because we hold the district court had no jurisdiction to consider the claims, we have no authority to pass on these very interesting arguments, tempting though it might be.

3. Defendant has sought such modification both before and after the indictment. Judge Wilson denied the motions and defendant has apparently not appealed. We do not decide whether these rulings preclude his raising the claim anew now that the Sixth Amendment issue is more concretely presented. Nor do we rule on whether such a motion would be timely.